IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST AS OWNER
TRUSTEE OF THE RESIDENTIAL CREDIT
OPPORTUNITIES TRUST III,

      Plaintiff,

v.                                                                                             CV 18-0346 JCH/JHR

GREGORY HUTCHINS, in his individual capacity
and as personal representative of the Estate of
SANDRA J. NEILL, and THE UNKNOWN HEIRS,
DEVISEES, OR LEGATEES OF SANDRA J. NEILL,

      Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Defendant Gregory Hutchins' Motion to Dismiss [Doc. 34], filed March 28, 2019, and fully briefed on April 22, 2019. [*See* Docs. 35, 38]. Pursuant to 28 U.S.C. § 636(b), presiding District Judge Herrera referred this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." [Doc. 46]. At issue in Mr. Hutchins' Motion is whether the Court has subject matter jurisdiction over the parties, whether Plaintiff Wilmington Savings has standing to bring the present action, and whether it has adequately stated a claim for *in rem* foreclosure of the subject property. Having considered the parties' arguments and all pertinent authority, the undersigned recommends that Defendant's Motion to Dismiss be **DENIED**.

## I. INTRODUCTION

Wilmington Savings seeks an *in rem* judgment of foreclosure against the former property of Ms. Sandra J. Neill, more commonly known as 929 Purple Aster Dr., Bernalillo, New Mexico.

1

Mr. Hutchins, who claims an interest in the property post-dating Ms. Neill's default, moves under Federal Rule of Civil Procedure 12 to dismiss Wilmington Savings' Complaint for lack of subject matter jurisdiction, lack of standing, and failure to state a claim. Mr. Hutchins' arguments are primarily based on his contention that Wilmington Savings does not exist as a legal entity and therefore cannot demonstrate the requirements of diversity of citizenship. Alternatively, Mr. Hutchins argues that Wilmington Savings has failed to demonstrate its ownership of the debt sufficient to demonstrate Article III standing and to state a claim under New Mexico law. For the reasons that follow, the Court disagrees.

## II. BACKGROUND

Plaintiff, "Wilmington Savings Fund Society, FSB, d/b/a, Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust III," [Doc. 1, p. 1] (hereinafter "Wilmington Savings"), filed its Complaint for *In Rem* Foreclosure against Sandra J. Neill on April 13, 2018. [*See generally* Doc. 1]. Attached to the Complaint is a copy of a promissory note, dated May 23, 2007, and indorsed in blank, bearing Ms. Neill's signature and evidencing a debt in the principal sum of $225,000.00 with a fixed interest rate of 6.875% per annum until paid. [*See* Doc. 1-2]. Also attached to the Complaint is a copy of a recorded mortgage, dated June 26, 2007, bearing Ms. Neill's signature and securing the Note by reference to:

> Lot numbered One Hundred Ninety-five (195) of THE ORCHARD'S UNIT 3, being a replat of Tract 3 of the Orchard's, as the same is shown and designated on the plat thereof, filed in the Office of the County Clerk of Sandoval County, New Mexico, on January 31, 2005, in Vol. 3, Folio 2499B (Book 408, Page 3428, as Document No. 200503428).

This property is more commonly known as 929 Purple Aster Dr., Bernalillo, New Mexico. [*See* Doc. 1-3]. Also attached to the Complaint is an affidavit of Wilmington Savings' counsel, stating that his law firm is in possession of the original note that is the subject of this suit. [*See* Doc. 1-4].

On June 13, 2018, Ms. Neill filed a Notice of Filing of Petition of Bankruptcy, thereby staying these proceedings. [*See* Doc. 9]. On September 20, 2018, Wilmington Savings filed a Notice Regarding Closing of Bankruptcy and Discharge. [*See* Doc. 10]. On September 21, 2018, Mr. Hutchins, claiming to be "Executor of the Estate of Sandra J. Neill," filed a Suggestion of Death informing the Court of Ms. Neill's death. [*See* Doc. 12]. After briefing, District Judge Herrera granted Wilmington Savings' Motion to Amend its Complaint to substitute Mr. Hutchins as well as any unknown heirs who make claim an interest in the subject property as Defendants in light of Ms. Neill's death. [*See* Docs. 13, 28]. Wilmington Savings filed its Amended Complaint naming Mr. Hutchins in his individual capacity and as personal representative of the estate of Ms. Neill and her unknown heirs, devisees or legatees on March 1, 2019. [Doc. 30].

On March 28, 2019, Mr. Hutchins filed the instant Motion. [Doc. 34]. In it, he raises three issues. First, Mr. Hutchins argues there is no diversity jurisdiction because Wilmington Savings does not exist as a legal entity and cannot claim citizenship of any state. [Doc. 34, pp. 5-8]. Second, Mr. Hutchins argues that Wilmington Savings has no standing to bring the present action because it has no legally cognizable existence and, therefore, cannot suffer an injury in fact as required by Article III. [Doc. 34, pp. 8-11]. Finally, Mr. Hutchins argues that Wilmington Savings has failed to state a claim because it "has not alleged facts that would allow the reasonable inference that it is the owner or assignee of the beneficial interest in the debt." [Doc. 34, p. 20].

On April 11, 2019, Wilmington Savings filed a Response. [Doc. 35]. In it, Wilmington Savings presents evidence of its legal existence, and argues that the Amended Complaint plausibly alleges its capacity to sue as a statutory trust along with the requirements of diversity jurisdiction. [Doc. 35, p. 12; *see* Docs. 35-1, 35-2]. Wilmington Savings also argues that it has standing to foreclose under New Mexico law because the Complaint included as attachments (1) a scanned

3

reproduction of the original promissory note at issue in this lawsuit; and (2) an affidavit from an employee of Lewis Roca Rothgerber Christie LLP attesting that this original promissory note was in the possession of the law firm at the time of filing suit. [*Id*., pp. 2-3]. Wilmington Savings also argues that it has adequately pled Article III standing because it has suffered a "defined economic injury" due to the fact that Ms. Neill and any successor now claiming an interest in the subject property have failed to pay the obligations under the mortgage. [Doc. 35, pp. 10-12]. Wilmington Savings can trace this injury to Defendant Hutchins and any individuals who may claim an interest in the property. As to redressability, Wilmington Savings argues that "the federal court system can easily provide relief through in rem relief against the real estate at issue in the dispute," explaining that "[t]he standard remedy afforded in a mortgage foreclosure dispute is to move forward with a foreclosure auction under the oversight of a special master." [*Id.*, p. 11]. Thus, Wilmington Savings argues that the Amended Complaint plausibly alleges a right to relief on the loan obligation consistent with Rule 12(b)(6) standards because a borrower's failure to pay the loan obligation permits it, as the mortgagee, to pursue suit on the mortgage. [Doc. 35, p. 13].

On April 22, 2019, Mr. Hutchins filed a Reply, largely restating his arguments in support of the Motion. [*See* Doc. 38].

## III. ISSUES

The Court discerns three issues from the parties' briefs:

**A)** Does a federal court have diversity jurisdiction where the Plaintiff identifies itself as "Wilmington Savings Fund Society, FSB, d/b/a/ Christiana Trust as Owner Trustee of the Residential Opportunities Trust III," presents evidence that it is a valid corporation and statutory trust under Delaware law, claims a right to foreclose on real property in order to recover a debt in

excess of the statutory minimum amount, and identifies the defendants as a deceased New Mexico resident and a purported personal representative who is a resident of Connecticut?

**B)** Does a plaintiff in a mortgage foreclosure action adequately allege standing to seek foreclosure *in rem* where it presents evidence that it is a Delaware corporation and the owner trustee of a statutory trust under Delaware law, and further alleges that it was the holder of the subject note and associated mortgage on the date of filing the original complaint for foreclosure?

**C)** Does a plaintiff state a valid claim for foreclosure *in rem* sufficient to defeat a Rule 12(b)(6) motion to dismiss where it alleges and presents evidence that it is a Delaware corporation that is the owner trustee of a statutory trust that was the holder of a note and associated mortgage when the original complaint was filed and remains so presently?

## IV. <u>LEGAL STANDARDS</u>

Mr. Hutchins' Motion is brought pursuant to Rule 12 of the Federal Rules of Civil Procedure; specifically, Rules 12(b)(1) and 12(b)(6). It also challenges Wilmington Savings' standing under Article III of the Constitution.

**A) Rule 12(b)(1):**

A motion brought under Rule 12(b)(1) attacks the subject matter jurisdiction of the district court. Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Happy Camper Mgmt., LLC v. Ament*, CV 15-0927 WJ/GBW, 2016 WL 8259515, at *2 (D.N.M. June 16, 2016) (quoting *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994)). "Subject-matter jurisdiction involves a court's authority to hear a given type of case

… and may not be waived." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (citing *United States v. Morton*, 467 U.S. 822, 828 (1984); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: (1) facial attacks on the complaint's allegations; or, (2) factual attacks on the underlying facts on which subject matter jurisdiction depends. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations…. [Rather, a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)…. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt*, 46 F.3d at 1002 (citations omitted).

"It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)). A federal court will have subject matter jurisdiction based on diversity of citizenship of the parties where: (i) there is complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Under Section 1332, "the citizenship of all defendants must be different from the citizenship of all plaintiffs." *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). "For diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (citing 28 U.S.C. § 1332(c)(1) (2012); *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010)).

## B) Article III Standing:

Article III of the United States Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontrover[ies]." U.S. Const. art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). "[T]he irreducible constitutional minimum of standing contains three elements[:]" the plaintiff must have suffered a "concrete and particularized" injury that is "actual or imminent" (i.e., an "injury in fact"), there must be "a causal connection between the injury and the conduct complained of," and it must be "likely ... that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoted authority omitted).

"To effectively show a direct and concrete injury, a party seeking to enforce a promissory note must establish that it has the right to enforce the note under the New Mexico Uniform Commercial Code[, NMSA 1978, § 55-3-301 (1992) ("UCC")]." *Los Alamos National Bank v. Velasquez*, 2019-NMCA-040, ¶ 14, 446 P.3d 1220, 1224. The UCC provides that a person or entity is entitled to enforce a promissory note where it is the holder of the instrument; and, where, as here, the note is indorsed without identifying a bearer, it is indorsed in blank and payable to the bearer, who is in turn defined as the "holder" of the note under New Mexico law. *Id.*, ¶¶ 14-15

(citations omitted). Thus, "[u]nder the UCC, possession of a note properly indorsed in blank establishes the right to enforce that note." *Id.*, ¶ 15 (citation omitted).

   C) **Rule 12(b)(6):**

Rule 12(b)(6) permits the complaint to be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010). A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted). Thus, to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See id.* at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1983), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). Possession of the original indorsed note at the time of filing of the complaint is required to establish standing in a foreclosure case. *Los Alamos National Bank v. Velasquez*, 2019-NMCA-040, ¶ 14, 446 P.3d 1220, 1224. However, once possession is shown, "[i]t is well-established that 'the mortgagee may sue either on the note or foreclose on the mortgage[.]'" *Romero v. Onewest Bank, FSB*, 2013 WL 5309570, *2 (N.M. Ct. App. 2013) (unpublished) (quoting *Keppler v. Slade*, 1995-NMSC-035, ¶ 7, 119 N.M. 802, 896 P.2d 482). Foreclosure of the mortgage is an *in rem* remedy, whereas a monetary judgment against the signer of the promissory note is an *in personam* remedy. *Id.*

V. **ANALYSIS**

A) **The Court has jurisdiction over this case because there is complete diversity of the parties and the amount in controversy exceeds $75,000.00.**

Mr. Hutchins' Motion constitutes a factual attack on the subject matter jurisdiction of this Court, meaning that the Court may consider matters outside the pleadings without converting the motion to one seeking summary judgment. The Court has reviewed Mr. Hutchins' affidavit attached to the Motion, in which he challenges Wilmington Savings' existence as a legal entity. [*See* Doc. 34, pp. 24-25]. Mr. Hutchins' argument (and affidavit) is premised upon the "cursory" searches he made of the Delaware Secretary of State's website and SEC.gov. [*See* Doc. 34, p. 7]. However, in response to Mr. Hutchins' affidavit, Wilmington Savings proffered evidence that it is a valid Delaware Corporation and statutory trust. [*See* Docs. 35-1, 35-2]. Mr. Hutchins does not

rebut this evidence in his reply brief. [*See generally* Doc. 38]. Therefore, Wilmington Savings has proved its legal existence and capacity to bring this suit by a preponderance of the evidence.

With its legal existence established, the Court likewise finds that Wilmington Savings has adequately pled complete diversity. In the Amended Complaint Wilmington savings asserts that it is a citizen of Delaware and that the Defendants are a Connecticut citizen and the heirs of a New Mexico citizen. As mentioned, for diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located. Here, Wilmington Savings pled that it is was incorporated in Delaware, where it maintains its principal place of business. [Doc. 29, p.1]. Wilmington Savings' claims against Mr. Hutchins are brought against him in his individual capacity and as the putative executor or personal representative of Ms. Neill's estate. His citizenship (Connecticut) is pled. [Doc. 29, p.2]. Additionally, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Here, Ms. Neill was a citizen of the State of New Mexico. Therefore, her legal representative shall be deemed to be a citizen of the State of New Mexico for diversity purposes. Therefore, because there is complete diversity between the parties to this case, and because the amount in controversy (the value of the Note) is uncontested, Wilmington Savings has adequately pled and proved that this Court has subject matter jurisdiction on the basis of diversity of citizenship.

**B) Wilmington Savings has adequately pled and proved its Article III standing to foreclose on the Note.**

Wilmington Savings has demonstrated the right to enforce the Note under New Mexico's UCC by attaching a copy of the Note, indorsed in blank, to its Complaint. Thus, Wilmington Savings has demonstrated a direct and concrete injury under New Mexico case law. Wilmington Savings' injury can be traced to the failure of Defendants to pay Ms. Neill's obligations under the

mortgage, and Wilmington Savings' injury is redressable by a decree of foreclosure and an order approving a foreclosure auction under the authority of a special master. Therefore, Wilmington Savings has adequately pled the requirements of Article III standing to survive Mr. Hutchins' Motion to Dismiss.

**C) Wilmington Savings has adequately stated a claim for foreclosure *in rem* under New Mexico law.**

Consistent with Ms. Neill's bankruptcy discharge, the only relief pursued in this lawsuit is *in rem*, based on the mortgage securing the property as opposed to any personal obligation of Ms. Neill or her successors on the promissory note. The borrower's failure to pay the loan obligation permits a mortgagee to pursue suit on the mortgage. Here, Wilmington Savings pled in the Amended Complaint that "[t]he last payment made by Ms. Neill was applied to the September 1, 2008 scheduled installment, and the loan obligation remains in default by virtue of the lack of payments on the scheduled installments thereafter." [Doc. 29, p. 4]. Therefore, Wilmington Savings has adequately stated a claim for foreclosure *in rem*.

## VI. CONCLUSION

Mr. Hutchins' arguments in support of dismissal are based primarily on his failure to identify Wilmington Savings as a legal entity. However, having proved its existence by a preponderance of the evidence, Wilmington Savings has adequately satisfied the requirements of diversity jurisdiction. Moreover, by attaching a copy of the unendorsed note to its Complaint, Wilmington savings has demonstrated its standing to foreclose on the mortgage as a matter of federal and New Mexico law.

Wherefore, it is hereby recommended that Mr. Hutchins' Motion to Dismiss [Doc. 34], be **DENIED**.

_____
Jerry H. Ritter
U.S. Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**