# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST AS OWNER
TRUSTEE OF THE RESIDENTIAL CREDIT
OPPORTUNITIES TRUST III,

      Plaintiff,

v.                                                                                                                                        CV 18-0346 JCH/JHR

GREGORY HUTCHINS, in his individual capacity
and as personal representative of the Estate of
SANDRA J. NEILL, and THE UNKNOWN HEIRS,
DEVISEES, OR LEGATEES OF SANDRA J. NEILL,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Proposed Findings and Recommended Disposition ("PFRD") issued by Magistrate Judge Ritter on October 18, 2019, [Doc. 58], and on Defendant Gregory Hutchins' Objections to the PFRD, filed November 1, 2019. [Doc. 59]. In the PFRD, Magistrate Judge Ritter recommended that Hutchins' Motion to Dismiss [Doc. 34], filed March 28, 2019, be denied. Hutchins objects to Magistrate Judge Ritter's PFRD on the grounds that "the findings and conclusions are unsupported both in fact and law." [Doc. 59, p. 1]. Specifically, Hutchins objects to: (1) Magistrate Judge Ritter's conclusion that Plaintiff Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust, III ("Wilmington Savings") has established its legal existence by a preponderance of the evidence; (2) his factual finding that Wilmington Savings has a legal existence sufficient to support the Court's exercise of diversity jurisdiction; and, (3) his conclusion that Wilmington Savings has sufficiently alleged its standing under Article III of the Constitution so as to establish this Court's subject matter jurisdiction. [*See id.*, p. 2]. Having

reviewed these objections de novo, the Court determines they must be overruled. Therefore, the PFRD is **adopted** and Hutchins' Motion to Dismiss is **denied**.

## I. STANDARD OF REVIEW

When resolving objections to a magistrate judge's proposed findings and recommended disposition, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) (2012). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a de novo review of a party's timely, specific objections to the magistrate judge's report. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). A district court need not, however, "make any specific findings; the district court must merely conduct a de novo review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

## II. FACTS

Plaintiff, "Wilmington Savings Fund Society, FSB, d/b/a, Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust III," [Doc. 1, p. 1], filed its Complaint for In Rem Foreclosure against Sandra J. Neill on April 13, 2018. [Doc. 1]. Due to her alleged default, Wilmington Savings sought to foreclose on Neill's mortgage on the property known as 929 Purple Aster Dr., Bernalillo, New Mexico. [*See* Doc. 1-3]. This in rem proceeding is in addition to an in personam action Wilmington Savings filed against Neill in state court on September 18, 2014. *See* No. D-1329-CV-2014-01346. On June 13, 2018, Ms. Neill filed a Notice of Filing of Petition of Bankruptcy, which stayed these and the related state proceedings. [*See* Doc. 9]. On September 20,

2018, Wilmington Savings filed a Notice Regarding Closing of Bankruptcy and Discharge. [*See* Doc. 10].

On September 21, 2018, Hutchins, claiming to be the executor of Neill's estate, filed a Suggestion of Death on the record. [*See* Doc. 12]. Thereafter, this Court granted Wilmington Savings' Motion to Amend its Complaint to substitute Hutchins as well as any unknown heirs who may claim an interest in the subject property as Defendants. [*See* Docs. 13, 28]. Wilmington Savings filed its Amended Complaint on March 1, 2019, naming Hutchins in his individual capacity and as personal representative of the estate of Ms. Neill, as well as her unknown heirs, devisees or legatees. [Doc. 30]. Rather than submit an Answer, on March 28, 2019, Hutchins filed his Motion to Dismiss. [Doc. 34]. After briefing was complete this Court referred the case to Magistrate Judge Ritter, who issued his PFRD recommending that Hutchins' Motion be denied.

As recited in the PFRD, Magistrate Judge Ritter viewed Hutchins' Motion as a factual attack on the subject matter jurisdiction of this Court, and he appropriately considered the parties' submissions outside of the four corners of the Complaint without converting the motion to one seeking summary judgment. [Doc. 58, p. 9]. After reviewing an affidavit submitted by Hutchins and comparing its assertions against evidence proffered by Wilmington Savings, Magistrate Judge Ritter determined that Wilmington Savings proved that it is a valid Delaware corporation and statutory trust by a preponderance of the evidence. [*See id.* (citing Docs. 35-1, 35-2)]. Therefore, Magistrate Judge Ritter concluded that Wilmington Savings proved its legal existence and capacity to bring suit. [*Id.*, p. 10]. Relying on these findings, Magistrate Judge Ritter then concluded that the requirements of diversity jurisdiction were met. [*Id.*, p. 10]. Finally, Magistrate Judge Ritter concluded that Wilmington Savings adequately pled its standing to foreclose on the subject

mortgage under Article III and New Mexico's Uniform Commercial Code ("UCC"). [*Id.*, pp. 10-11].

In his Objections, Hutchins goes to great lengths to highlight how Wilmington Savings defined itself in its Amended Complaint. [*See* Doc. 59, pp. 2-3]. Hutchins claims that his affidavit proves that Wilmington Savings, as defined in the Amended Complaint, does not exist, and therefore "cannot invoke this Court's jurisdiction." [*See id.*, p. 4 (defining the "central threshold legal issue in this case" as "[h]as Plaintiff as defined and admitted in the amended complaint … proven by a preponderance of evidence its legal existence sufficient to establish diversity jurisdiction.")]. Hutchins argues that Wilmington Savings "placed no evidence into the record that would establish by a preponderance of evidence [its] legal existence[.]" [*Id.*, p. 7].

Hutchins admits that Wilmington Savings proffered a trust document and Delaware Secretary of State record in support of its Response to his Motion, [*id.*], yet he would invalidate their effect. [*Id.*, p. 12 ("The record is devoid of any proof that Plaintiff is a legal entity.")]. Hutchins argues that Wilmington Savings simply "does not possess a cause of action" as "the record is devoid of any admissible evidence that Plaintiff, as defined and admitted in paragraph 1 of the complaint, is a legal entity." [*Id.*, p.13]. He also posits that Magistrate Judge Ritter's conclusion that he failed to rebut Wilmington Savings' evidence equates to an improper finding of waiver. [*Id.*, pp. 8-11].

In a second and distinct attack, Hutchins objects to the PRFD's conclusion that Wilmington Savings has satisfied the requirements of Article III for standing as a foreclosure plaintiff. [*See id.*, p. 13-15]. Specifically, Hutchins contends "that Plaintiff has not factually alleged … that due to any ownership in the debt, that it has suffered a direct and personal injury." [*Id.*, p. 16]. Hutchins believes that Wilmington Savings is not the proper party to enforce the note at issue because the

state court never made "a determination … that Plaintiff had standing to enforce the note." [*Id.*, p. 17]. He adds that "[i]ntervening events have mooted the issue of Plaintiff's right to enforce the note." [*Id.*]. Specifically, Hutchins contends that "the bankruptcy and death of S.J. Neill has rendered all of these issues moot … by operation of law" because Ms. Neill's *in personam* liability on the note was discharged by the Bankruptcy Court. [*Id.*, p. 18].

### III.  APPLICABLE LEGAL STANDARDS

A motion brought under Rule 12(b)(1) attacks the subject matter jurisdiction of the district court. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: (1) facial attacks on the complaint's allegations; or, (2) factual attacks on the underlying facts on which subject matter jurisdiction depends. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations…. [Rather, a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)…. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt*, 46 F.3d at 1002 (citations omitted).

A federal court will have subject matter jurisdiction based on diversity of citizenship of the parties where: (i) there is complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1) (2018). For complete diversity, "the citizenship of all defendants must be different from the citizenship of all plaintiffs." *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). In this context, "a corporation is a citizen of its state of incorporation and the state where its principal place of business is located." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901,

905 (10th Cir. 2015) (citing 28 U.S.C. § 1332(c)(1) (2012); *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010)).

Article III of the United States Constitution further limits the jurisdiction of federal courts to "[c]ases" and "[c]ontrovers[ies]." U.S. Const. art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Standing to prosecute requires three elements: the plaintiff must have suffered a "concrete and particularized" injury that is "actual or imminent" (i.e., an "injury in fact"), there must be "a causal connection between the injury and the conduct complained of," and it must be "likely ... that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (quotation marks omitted). "To effectively show a direct and concrete injury, a party seeking to enforce a promissory note must establish that it has the right to enforce the note under the New Mexico Uniform Commercial Code[, NMSA 1978, § 55-3-301 (1992) ("UCC")]." *Los Alamos National Bank v. Velasquez*, 2019-NMCA-040, ¶ 14, 446 P.3d 1220, 1224. The UCC provides that a person or entity is entitled to enforce a promissory note where it is the holder of the instrument and, where the note is indorsed without identifying a bearer, it is indorsed in blank and payable to the bearer, who is in turn defined as the "holder" of the note under New Mexico law. *Id.*, ¶¶ 14-15 (citations omitted). Thus, "[u]nder the UCC, possession of a note properly indorsed in blank establishes the right to enforce that note." *Id.*, ¶ 15 (citation omitted).

Divergent from issues of standing, a complaint may be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The sufficiency of a complaint is a question of law and, when considering a rule 12(b)(6) motion, a court must accept as true all

6

well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010). Essentially, a plaintiff's complaint must contain sufficient facts, if assumed true, to state a claim to relief that is plausible on its face. *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Wilmington Savings' foreclosure claim relies upon New Mexico law. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1983), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). Possession of the original indorsed note at the time of filing of the complaint is required to establish standing in a foreclosure case. *Los Alamos National Bank*, 2019-NMCA-040, ¶ 14. Once possession is shown, "[i]t is well-established that 'the mortgagee may sue either on the note or foreclose on the mortgage[.]'" *Romero v. Onewest Bank, FSB*, 2013 WL 5309570, *2 (N.M. Ct. App. 2013) (unpublished) (quoting *Keppler v. Slade*, 1995-NMSC-035, ¶ 7, 119 N.M. 802, 896 P.2d 482). Foreclosure of the mortgage is an in rem remedy, whereas a monetary judgment against the debtor on the promissory note is an in personam remedy. *Id.*

## IV. ANALYSIS

The Court has reviewed Hutchins' objections to the PFRD de novo, and finds that most of Hutchins' objections are conclusory and easily disposed of. To the extent that there is any merit to the remaining objections, the Court will address them briefly.

First, the Court concludes that Wilmington Savings has rebutted Hutchins' affidavit asserting its lack of legal existence. The Court has reviewed the record and finds that Wilmington Savings has proved its legal existence and capacity to sue by a preponderance of the evidence. To the extent that Hutchins argues that this conclusion is only reachable via an assertion of waiver, the Court notes that Magistrate Judge Ritter never found waiver on Hutchins' part. Rather, Magistrate Judge Ritter correctly concluded Wilmington Savings presented persuasive evidence Hutchins' reply did not rebut. Hutchins' limited and self-serving affidavit neither meets nor which undercuts Wilmington Savings' documentation of its recognized lawful existence. Thus, Magistrate Judge Ritter correctly concluded that Hutchins failed to rebut the affirmative evidence offered by Wilmington Savings.

With Wilmington Savings' existence and capacity to sue established, the Court adopts Magistrate Judge Ritter's conclusion that the requirements of diversity jurisdiction are met in this case, and that it has standing to sue under Article III of the Constitution. The Court will not re-explain why this is the case, as these issues were adequately addressed by Magistrate Judge Ritter's PFRD, and Hutchins' objections to these findings do not raise any substantial issue that the Court need address.

Hutchins' remaining argument is that Wilmington Savings is not entitled to enforce the note under the UCC. However, the premises underlying this argument are simply wrong. Hutchins argues that the state court never ruled that Wilmington Savings could enforce the note, [Doc. 59,

p. 17], as if, without a state court ruling, Wilmington Savings' authority to enforce the note is only hypothetical. [*Id.*, p. 18]. Hutchins' position assumes that a federal court must have an affirmative ruling from a state court before it can determine the legal holder of a note and enforce it. To the contrary, state and federal courts have concurrent in personam jurisdiction over actions on promissory notes. *See Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) ("Where the judgment sought is strictly in personam, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other."). In New Mexico, a mortgagee may elect either an in personam or in rem remedy. *See Kepler*, 1995-NMSC-035, ¶¶ 7-8 ("The mortgagee may sue either on the note or foreclose on the mortgage, and may pursue all remedies at the same time or consequently.… The distinction between the two remedies is found in the historic view that a foreclosure action is purely quasi in rem, affording relief only against the secured property, and a suit on a bond or note is in personam.") (citations and internal alternations omitted). While Hutchins is right that an in rem mortgage foreclosure requires the plaintiff to prove its right to enforce the underlying note, he is wrong that a court cannot make that determination in the first instance in the in rem suit. Hutchins has not argued a preclusion doctrine preventing this Court from making such a finding, nor could he, given that there was never a necessary determination by the state court. *See, e.g.*, *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *20 (Bankr. D.N.M. Feb. 17, 2012) (unpublished) (discussing issue preclusion under New Mexico law). In sum, there is no barrier to this Court ruling on Wilmington Savings' status as the holder of the note.

Finally, Hutchins' suggestion that Neill's bankruptcy and subsequent death extinguished any right to enforce the note personally against her misses the point. Indisputably, a creditor may not enforce in personam a promissory note made part of a discharge in bankruptcy, but suit in rem to foreclose on property mortgaged as security for the note is not only possible but exceedingly common. If Hutchins had it his way, then bankruptcy would not only be a shield against collection of the unpaid debt, but also a sword to carve out a windfall from the excess value of the collateral. That is simply not how the law operates. *See, e.g.*, *In re Jester*, 2015 WL 6389290, at *7 (B.A.P. 10th Cir. Oct. 22, 2015), aff'd, *In re Jester*, 656 Fed. Appx. 425 (10th Cir. 2016) (unpublished) ("[T]he discharge injunction does not preclude in rem actions by secured creditors[.]").

## V. CONCLUSION

Hutchins' objections are without merit and are premised upon fundamental misstatements of the law of federal jurisdiction, *in rem* foreclosure, and bankruptcy. Wherefore, the Court hereby **adopts** Magistrate Judge Ritter's PFRD [Doc. 58], **overrules** Defendant Gregory Hutchins' Objections to the PFRD [Doc. 59], and accordingly **denies** Hutchins' Motion to Dismiss [Doc. 34], filed March 28, 2019. Hutchins shall file a responsive pleading as required by Federal Rule of Civil Procedure 12(a)(4)(A) within fourteen (14) days of the entry of this Memorandum Opinion and Order. It will then be up to Magistrate Judge Ritter to either schedule the case for discovery or proceed to analyze Wilmington Savings' pending dispositive motions.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE