IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST AS OWNER
TRUSTEE OF THE RESIDENTIAL CREDIT
OPPORTUNITIES TRUST III,

        Plaintiff,

v.                                            CV 18-0346 JCH/JHR

GREGORY HUTCHINS, in his individual capacity
and as personal representative of the Estate of
SANDRA J. NEILL, and THE UNKNOWN HEIRS,
DEVISEES, OR LEGATEES OF SANDRA J. NEILL,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on *Plaintiff's Motion for Summary Judgment Against Gregory Hutchins and Motion for Default Judgment Against Remaining Defendants* [Doc. 42], filed April 30, 2029; Defendant Gregory Hutchins' *Motion to Strike Affidavit of Ryan Walters and Cross Motion for Sanctions* [Doc. 43], filed May 13, 2019 and Defendant Gregory Hutchins' *Motion to Strike Affidavit of Ron McMahan and Cross Motion for Sanctions* [Doc. 44], filed May 13, 2019. Pursuant to 28 U.S.C. § 636(b), presiding District Judge Herrera referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." [Doc. 46]. Having considered the parties' submissions and all pertinent authority, I recommend that *Plaintiff's Motion for Summary Judgment Against Gregory Hutchins and Motion for Default Judgment Against Remaining Defendants* [Doc. 42], be GRANTED and that Defendant Hutchins' *Motion to Strike*

*Affidavit of Ryan Walters and Cross Motion for Sanctions* [Doc. 43] and *Motion to Strike Affidavit of Ron McMahan and Cross Motion for Sanctions* [Doc. 44] be DENIED.

## I.       FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff, "Wilmington Savings Fund Society, FSB, d/b/a, Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust III," [Doc. 1, p. 1] (hereinafter "Wilmington Savings"), filed its Complaint for *In Rem* Foreclosure against Sandra J. Neill on April 13, 2018. [*See generally* Doc. 1]. Wilmington Savings' has submitted a copy of a promissory note, dated May 23, 2007, and indorsed in blank, bearing Ms. Neill's signature and evidencing a debt in the principal sum of $225,000.00 with a fixed interest rate of 6.875% per annum until paid (Note) [Doc. 30-1], as well as a recorded mortgage (Mortgage), dated June 26, 2007, bearing Ms. Neill's signature and securing the Note by reference to:

> Lot numbered One Hundred Ninety-five (195) of THE ORCHARD'S UNIT 3, being a replat of Tract 3 of the Orchard's, as the same is shown and designated on the plat thereof, filed in the Office of the County Clerk of Sandoval County, New Mexico, on January 31, 2005, in Vol. 3, Folio 2499B (Book 408, Page 3428, as Document No. 200503428).

This property is more commonly known as 929 Purple Aster Dr., Bernalillo, New Mexico. [Doc. 1-3]. Additionally, Wilmington Savings submitted the Affidavit of Ryan M. Walters, who is counsel for Wilmington Savings in this litigation. [Doc. 1-4]. In the Affidavit, Mr. Walters states that his law firm is in possession of the original Note, secured by the Mortgage that Wilmington Savings seeks to foreclose in this suit. [*See id.*].

On June 13, 2018, Ms. Neill filed a Notice of Filing of Petition of Bankruptcy, thereby staying these proceedings. [Doc. 9]. On September 20, 2018, Wilmington Savings filed a Notice Regarding Closing of Bankruptcy and Discharge. [Doc. 10]. On September 21, 2018, Mr.

---

[1] On the record currently before the Court, the facts in this section are undisputed, except as noted.

Hutchins, claiming to be "Executor of the Estate of Sandra J. Neill," filed a Suggestion of Death informing the Court of Ms. Neill's death. [Doc. 12]. After briefing, District Judge Herrera granted Wilmington Savings' Motion to Amend its Complaint to substitute Mr. Hutchins as well as any unknown heirs who may claim an interest in the subject property as Defendants in light of Ms. Neill's death. [Doc. 13; Doc. 28].

Wilmington Savings filed its Amended Complaint naming Mr. Hutchins in his individual capacity and as personal representative of the estate of the Unknown Heirs, Devisees or Legatees of Ms. Neill on March 1, 2019. [Doc. 30]. Mr. Hutchins moved to dismiss the Amended Complaint challenging Wilmington Savings existence as a legal entity and its standing to foreclose the Mortgage. [Doc. 34, pp. 5-11]. Mr. Hutchins also argued that Wilmington Savings could not enforce the Note because Ms. Neill's *in personam* liability on the Note was discharged by the Bankruptcy Court. [Doc. 59, p. 18]. The Court denied Mr. Hutchins' motion, finding that: (1) Wilmington Savings had proven its legal existence and capacity to sue by a preponderance of the evidence; (2) Wilmington Savings, as holder of the Note had standing to bring this suit; and (3) the bankruptcy discharge did not preclude Wilmington Savings from foreclosing the Mortgage.[2] [Doc. 60, pp. 8-10].

Meanwhile, Wilmington Savings sought and obtained on Order from the Court permitting it to serve the Unknown Heirs, Devisees or Legatees of Ms. Neill by publication. [Doc. 32]. On April 19, 2019, Wilmington Savings submitted an Affidavit of Publication and on April 23, 2020, it filed a Praecipe detailing its efforts to locate and serve Ms. Neill's Unknown Heirs, Devisees or

---

[2] Mr. Hutchins' Response to Wilmington Savings' summary judgment motion was filed prior to the Court's ruling on his Motion to Dismiss and the issues raised by Mr. Hutchins in his filings overlap significantly. To the extent that Mr. Hutchins challenges Wilmington Savings' legal existence, standing, and ability to enforce the Note (due to the bankruptcy discharge) in opposing summary judgment, I incorporate the Court's prior analysis and rulings on these issues by reference and will not address them again in this Report and Recommendations.

Legatees and requesting an Entry of Default. [Doc. 37; Doc. 37-1; Doc. 40]. The Clerk's Entry of Default was filed April 25, 2019. [Doc. 41].

On April 30, 2019, Wilmington Savings moved for summary judgment against Mr. Hutchins and for default judgment against the Unknown Heirs, Devisees or Legatees of Ms. Neill. [Doc. 42]. Subsequently, Mr. Hutchins moved to strike the Affidavit of Ron McMahan, CEO of Wilmington Savings' parent company, American Mortgage Investment Partners, which was submitted in support of Wilmington Savings' motion for summary judgment and the Affidavit of Ryan Walters, counsel for Wilmington Savings, which was submitted with Wilmington Savings' Amended Complaint. [Doc. 43, p. 4; Doc. 44, pp. 9-10]. Mr. Hutchins also sought sanctions under Federal Rule of Civil Procedure 56(h)[3], arguing that the McMahan and Walters Affidavits were submitted in bad faith.

## II.    ANALYSIS

### A.  Wilmington Savings is Entitled to Summary Judgment Against Mr. Hutchins

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

---

[3] In requesting sanctions, Mr. Hutchins cites to Rule 56(g), which contained the sanctions provision of Rule 56 prior to 2010. [Doc. 43, p. 4; Doc. 44, pp. 9-10]. In the 2010 amendment of the Rule 56, the sanctions provision was carried forward in subsection (h). *See* Fed. R. Civ. P. 56(h) advisory committee's note to 2010 amendment ("Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.").

U.S. 317, 325 (1986). If this burden is met, the burden shifts to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

Here, Mr. Hutchins challenges the timeliness of the summary judgment motion, the adequacy of the record to support summary judgment, and the admissibility of two affidavits submitted by Wilmington Savings' as evidence in support of summary judgment. I will briefly address these challenges before addressing the merits of Wilmington Savings' motion.

### 1. Wilmington Savings' Summary Judgment Motion is not Untimely Under Rule 56(b)

Rule 56(b) provides that, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Citing Rule 56(b), without further explanation or analysis, Mr. Hutchins asserts that Wilmington Savings' summary judgment motion is untimely and should be dismissed. [Doc. 45, p. 2]. However, as Mr. Hutchins recognizes, discovery in this case has not closed. [*Id.*]. In fact, the Court has not yet set a date for the close of discovery. Thus, Wilmington Savings' motion, having been filed well before the close of discovery, is not untimely under Rule 56(b).

To the extent that Mr. Hutchins is arguing that the motion is premature since the parties have not engaged in discovery, I disagree. [Doc. 45, p. 18]. Rule 56(b) does not prohibit a motion from being filed prior to discovery. Rather, it expressly provides that a motion may be filed *at any time* prior to 30 days after the close of discovery. *See* Fed. R. Civ. P. 56(b).

**2. Mr. Hutchins has not Established that Discovery is Necessary to Defend Against Summary Judgment**

Mr. Hutchins also requests discovery under Rule 56(d), arguing that "[a]ll of the facts necessary for [his] defense are peculiarly within the possession of [Wilmington Savings]." [Doc. 45 p. 14]. Specifically, Mr. Hutchins claims that he "has not seen or been presented with any admissible evidence" of: (1) the Note having been executed by Ms. Neill as alleged by Wilmington Savings; (2) a valid assignment of the interest in the Mortgage to Wilmington Savings; and (3) the amount due on the Note. [Doc. 45, p. 24].[4]

Rule 56(d) provides that where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment]," the court may, in its discretion, (1) defer considering a motion for summary judgment or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d); *see also Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Price ex rel. Price v. W. Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). "Unless dilatory or lacking in merit," a party's 56(d) application "should be liberally treated." *Jensen*, 998 F.2d at 1553-54 (internal quotation marks and citation omitted).

Rule 56(d), however, is not a license for a "fishing expedition," *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990), and the party invoking Rule 56(d) must explain by affidavit why

---

[4] Mr. Hutchins also claims that he lacks evidence related to Wilmington Savings' existence as a legal entity and that he lacks evidence that Wilmington Savings' claim is not barred by the statute of limitations. [Doc. 45, pp. 13-14]. As Wilmington Savings' existence as a legal entity has already been decided by this Court, and Mr. Hutchins has not otherwise raised the statute of limitations as a bar to Wilmington Savings' claim, neither is at issue here.

the party cannot present facts precluding summary judgment, *Price*, 232 F.3d at 783. The Tenth Circuit has held that a Rule 56(d) affidavit must satisfy four requirements. It must: (1) identify the "probable facts not available," and (2) explain why those facts "cannot be presented currently," (3) explain "what steps have been taken to obtain these facts," and (4) explain "how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Id.*; *see also Valley Forge Ins. Co. v. Health Care Mgmt. Partners*, 616 F.3d 1086, 1096 (10th Cir. 2010); *Jensen*, 998 F.2d at 1554.

Here, Mr. Hutchins claims that he has not "seen or been presented with admissible evidence" regarding (1) the Note executed by Ms. Neill as alleged by Wilmington Savings; (2) the assignment of the interest in the Mortgage to Wilmington Savings; and (3) the amount due on the Note has not been made available. [Doc. 45, p. 24]. However, Wilmington Savings has submitted copies of the Note executed and delivered by Ms. Neill to CTX Mortgage Company, LLC [Doc. 1-2; Doc 30-1], the Mortgage securing the Note [Doc. 30-2], Assignments of Mortgage documenting the transfer of the mortgage interest from CTX Mortgage Company, LLC to Wilmington Savings [Doc. 30-4], a letter notifying Ms. Neill of the default and intent to accelerate the sums due [Doc. 42-3], and a payoff schedule which includes a breakdown of the amount Wilmington Savings claims is due on the loan [Doc. 42-1, pp. 5-8]. Wilmington Savings has also submitted the Affidavit of its attorney, Ryan Walters, in which Mr. Walters states that his firm is in possession of the original Note executed by Ms. Neill and the Affidavit of Gregory McMahan which addresses, *inter alia*, the assignment of the mortgage interest to Wilmington Savings, the default and the amount due on the loan. [Doc. 30-3; Doc. 42-1].

Mr. Hutchins does not explain how this evidence is insufficient to provide the information he seeks, what steps he has taken to obtain the information himself, or how additional time will

allow him to obtain the information and rebut summary judgment. [Doc. 45, pp. 14-15]. Accordingly, Mr. Hutchins' has not demonstrated that he cannot present the facts necessary to defend against summary judgment or that discovery will allow him to obtain such facts. I recommend that Mr. Hutchins request for discovery under Rule 56(d) be denied.

**B. Mr. Hutchins' Challenges to the Admissibility of the McMahan and Walters Affidavits and Requests for Sanctions are Without Merit**

### 1. Mr. Hutchins Has Not Shown that the Statements in the McMahan Affidavit Lack Foundation

Under rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). An affidavit is thus "inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2012) (internal quotation marks and citation omitted). This standard arises from the Federal Rules of Evidence, which require a testifying witness to have personal knowledge of the matter. *See id.* In evaluating an affidavit under this standard, a court may consider the witness' own testimony to determine whether there is sufficient evidence to support a finding of personal knowledge. *Hansen v. PT Bank Negara Indon. (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013). Rule 56(c)(4)'s personal knowledge requirement is construed in tandem with rule 602 of the Federal Rules of Evidence. *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1123 (10th Cir. 2005). Rule 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

"This standard is not difficult to meet." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014). "A court should exclude testimony for lack of personal knowledge only if in the proper exercise of the []court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." *Id.*; *see United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (internal quotation marks and citation omitted); *see also* 1 Kenneth S. Broun, McCormick on Evidence § 10 n. 6 (7th ed. 2013) ("[T]he foundational fact of personal knowledge under Rule 602 falls under Rule 104(b); and the trial judge plays only a limited, screening role, merely deciding whether the foundational testimony would permit a rational juror to find that the witness possesses the firsthand knowledge."); 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6022 (2d ed. 2007) ("[T]he testimony is excluded only if, as a matter of law, no juror could reasonably conclude that the witness perceived the facts to which []he testifies.").

Here, Mr. Hutchins argues that the McMahan Affidavit should be stricken because the following facts to which Mr. McMahan attests are not based on his personal knowledge: (1) Wilmington Savings is a subsidiary of American Mortgage Investment Partners and Wilmington Savings and in good standing with the Delaware Secretary of State; (2) the Note was indorsed in blank by Ms. Neill; (3) the Mortgage was assigned to Wilmington Savings; (4) Ms. Neill defaulted on the subject loan; and (5) the total due on the loan is $462,486.46. [Doc. 44, pp. 3-6]. However, Mr. Hutchins has not demonstrated that Mr. McMahan could not have perceived or observed these facts. *See* Wright & Gold, *supra*.

With regard to the relationship between American Mortgage Investment Partners and Wilmington Savings, Mr. McMahan states that he is the CEO of American Mortgage Investment Partners, that Wilmington Savings is a subsidiary owned by American Mortgage Investment

Partners, and that Wilmington Savings was formed in 2016, is currently in existence, and is in good standing with the Delaware Secretary of State. [Doc. 42-1, p. 1]. Mr. Hutchins contends that Mr. McMahan has not established the foundation of his personal knowledge regarding the relationship between American Mortgage Investment Partners and Wilmington Savings and Wilmington Savings' good standing with the Delaware Secretary of State. [Doc. 44, pp. 3-4]. I disagree. Mr. McMahan's position as CEO of American Mortgage Investment Partners is not disputed. [*See generally* Doc. 44]. As CEO of American Mortgage Investment Partners, Mr. McMahan certainly could have personal knowledge regarding the creation, identity, and good standing of the company's subsidiaries, including Wilmington Savings.

As to the collection of the loan obligation at issue here, Mr. McMahan states in his Affidavit that, in the regular performance of his job functions, he is familiar with business records of American Mortgage Investment Partners and Wilmington Savings for the purpose of collecting on loan obligations and relevant here, those records include the Note, Mortgage, Assignments of Mortgage, default notice, and payoff schedule for the loan at issue. [Doc. 42-1, pp. 1-3]. Mr. Hutchins argues that these statements constitute inadmissible hearsay because Mr. McMahan (1) has not established that they are based on personal knowledge of facts pertaining to the "underlying transaction between Plaintiff and Defendants" and (2) cannot base his personal knowledge on the documents referenced in the Affidavit because the documents do not fall within the business records exception to the rule against hearsay. [Doc. 44, p. 6].

An affiant may obtain personal knowledge by reviewing business records. *See Bryant*, 432 F.3d at 1123-24 (holding that an affidavit based on a review of business records was based on personal knowledge). In this case, Mr. McMahan's personal knowledge of the underlying transaction can be based on his review of the business records referenced in his Affidavit, including

the Note, Mortgage, Assignments of Mortgage, default notice, and payoff schedule, provided the documents meet the admissibility standard for business records set forth in Federal Rule of Evidence 803(6).

Under Rule 803(6), to be admissible, business records must: (1) have been prepared in the normal course of business, (2) have been made at or near the time of the events it records, (3) be based on the personal knowledge of the custodian or another qualified witness, and (4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness. *See* Fed. R. Evid. 803(6). A business record may be sufficiently authenticated taking into consideration the appearance, contents, substance, or other distinctive characteristics, together with all the circumstances. *See Law Co., Inc. v. Mohawk Constr. and Supply Co., Inc.*, 577 F.3d 1164, 1171 (10th Cir. 2009); Fed. R. Evid. 901(b)(4)). The testimony of a witness with knowledge may satisfy this requirement. *See* Fed. R. Evid. 901(b)(1).

Here, the Note, Mortgage, and Assignments of Mortgage include acknowledgments and are therefore self-authenticating, requiring no further authentication.[5] [Doc. 30-1, p. 5; Doc. 30-2, p. 16; Doc. 30-4, pp. 2, 3, 6]; *see* Fed. R. Evid. 902 (8) (providing that acknowledged documents— documents "accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments"—are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted."). Moreover, in his Affidavit, Mr. McMahan attests that the documents referenced, including the Note, Mortgage, Assignments of Mortgage, default notice, and payoff schedule were: (1) "made by or from information transmitted by a person with knowledge of the events or conditions recorded," (2) "made at or near the time of the events or conditions recorded," (3) "made in the regular course of business activity

---

[5] Although Mr. Hutchins claims that the Note was not notarized, a review of the record reveals that the indorsed Note was acknowledged by a notary public. [Doc. 30-1, p. 5].

conducted by [American Mortgage Investment Partners and Wilmington Savings]," and (4) "kept in the regular course of business activity conducted by [American Mortgage Investment Partners and Wilmington Savings]." [Doc. 42-1, p. 2]. Mr. McMahan's knowledge and experience as CEO of American Mortgage Investment Partners and his familiarity with the business records of the company and its subsidiary, Wilmington Savings, is sufficient to authenticate the documents referenced as business records. *See* Fed. R. Evid. 803(6); Fed. R. Evid. 901(b)(1).

Mr. Hutchins claims that the payoff schedule prepared by loan servicer FCI Lender Services, Inc., is unreliable as a business record because the document contains a disclaimer regarding the accuracy of the information contained therein. [Doc. 44, pp. 8-9]. However, Mr. Hutchins does not allege, and there is no evidence in the record to indicate that, the information contained in the payoff schedule is not accurate. The disclaimer, which reads, "Data provided on this page is for informational purposes only and not to be used for tax purposes or Reinstatements out of Foreclosure. FCI does not warrant or represent that the information contained herein is accurate. Please call Customer Service for account details" [Doc. 42-1, pp. 5-8], appears to be a standard disclaimer by the loan servicer and does not itself indicate that the information contained in the payoff statement in this case is inaccurate or unreliable. *See Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995) ("The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records.").

For these reasons, I conclude that Mr. Hutchins' challenges to the foundation and reliability of the McMahan Affidavit are without merit.

**2.  Mr. McMahan's Statements are not Impermissible Legal Conclusions**

Mr. Hutchins claims that Mr. McMahan's statements—that the Note was indorsed in blank, that the Mortgage was assigned to Wilmington Savings, and that the loan is in default, are legal conclusions improperly included in the McMahan Affidavit. [Doc. 44, pp. 4-5]. Mr. Hutchins is correct that an affidavit submitted in support of summary judgment must set out facts based on the affiant's personal knowledge and should not include legal conclusions. *See* 6 Part 2, James Wm. Moore et al., *Moore's Federal Practice* ¶ 56-22[1], at 56-746 to-49 (1993) ("The affidavit is no place for ultimate facts and conclusions of law, nor for argument of the party's cause. But if the affidavit contains relevant material facts, although these are intermingled with conclusions of law, the court may disregard the conclusions of law and consider the rest of the affidavit."); *see also Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010) (holding that affidavits stating legal conclusions and not setting forth any facts, admissible or otherwise, that a court could consider as raising a material issue of fact were insufficient to support summary judgment); *Morgan v. Willingham*, 424 F.2d 200 (10th Cir. 1970) (holding that "mere statements of legal conclusions, w[ere] insufficient to support summary judgment.").

However, the statements to which Mr. Hutchins is objecting here are assertions of fact, not legal conclusions. A legal conclusion is a "statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result" whereas a statement of fact is a "declaration that asserts or implies the existence or nonexistence of a fact." *Legal Conclusion*, Black's Law Dictionary 11th ed. (2019); *Statement of Fact*, Black's Law Dictionary 11th ed. (2019).

With respect to Mr. McMahan's statement regarding the indorsement of the Note, a note is "indorsed in blank" where it is indorsed (signed, typically on the back of the instrument), making it payable to someone other than the payee, but does not identify a person or entity to whom it is

13

made payable. *See* Black's Law Dictionary (11th ed. 2019) (defining "indorse" as "to sign (a negotiable instrument), usually on the back, either to accept responsibility for paying an obligation memorialized by the instrument or to make the instrument payable to someone other than the payee"); *In re Schmeglar*, 523 B.R. 119, 123 (Bankr. N.D. Ill. 2014) ("A Note is 'indorsed in blank' where the indorsement does not identify a person to whom the Note is made payable."). Whether the Note is indorsed (signed by the original payee) and whether the indorsement identifies a person or entity to whom the Note is made payable are factual questions that can be resolved by reviewing the document. Thus, whether the Note is indorsed in blank is not an impermissible legal conclusion.

As to Mr. McMahan's statement regarding the assignment of the Mortgage interest to Wilmington Savings, an assignment of mortgage is a document "by which a mortgage-holder transfers the mortgage to a third party." *Assignment of Mortgage*, Black's Law Dictionary (11th ed. 2019). Whether the Assignments of Mortgage at issue here show a direct line of transfer of the Mortgage from the original CTX Mortgage Company, LLC to Wilmington Savings can be ascertained by reviewing the Assignments themselves. Accordingly, whether the Mortgage was assigned to Wilmington Savings is a factual determination, not a legal conclusion.

Finally, with respect to Mr. McMahan's statement that the subject loan is in default, "default" is defined as the "omission or failure to perform a legal or contractual duty; especially, the failure to pay a debt when due." *Default*, Black's Law Dictionary (11th ed. 2019). Whether Ms. Neill failed to timely pay on the subject loan can be determined by reviewing the loan documents, including the default notice and the payoff schedule, which reflect missed payments on the loan beginning in October 2008. [Doc. 42-1]. Therefore, whether the loan is in default is a factual determination rather than a legal conclusion.

14

**3. Wilmington Savings was not Required to Attach Referenced Documents to the McMahan Affidavit**

Mr. Hutchins cites Rule 56(e) for the proposition the Mr. McMahan Affidavit should be stricken because Wilmington Savings did not attach certified copies of each document referenced to the Affidavit itself. [Doc. 43, pp. 3-5; Doc. 53, pp. 6-7]. Prior to 2010, Rule 56(e) required that "[s]worn or certified copies of all papers ... referred to in an affidavit shall be attached thereto or served therewith." *Bryant*, 432 F.3d at 1122 (citing Fed. R. Civ. P. 56(e) as it existed in 2005). In the 2010 amendment of Rule 56, some of the provisions of former subdivision (e)(1) were carried forward in subdivision (c)(4), while other provisions were relocated or omitted. *See* Fed. R. Civ. P. 56(c)(4) advisory committee notes to 2010 amendment. "The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted [from the 2010 amendment] as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." *Id.*

Here, the documents referenced in but not attached to the McMahan Affidavit are in the record as exhibits to Wilmington Savings' Amended Complaint and summary judgment motion. [Doc. 30-1; Doc. 30-2; Doc. 30-4; Doc. 42-2; Doc. 42-3; Doc. 42-4; Doc. 42-5; Doc. 42-6; Doc. 42-7; Doc. 42-8]. Accordingly, Wilmington Savings was not required to resubmit the documents with the Affidavit and its failure to do so is not grounds to strike the Affidavit.

**4. Mr. Hutchins has not Shown that the Statements in the Walters Affidavit Lack Foundation**

In his Affidavit, Mr. Walters states that he represents Wilmington Savings in the current lawsuit, that he is the attorney responsible for maintaining the litigation filed and that the file in his firm's possession includes the original Note for the loan at issue in this case. [Doc. 30-3]. Mr.

15

Hutchins argues that Mr. Walters cannot have personal knowledge that the Note in his firm's possession is actually the original Note since Mr. Walters does not attest to having witnessed the Note being executed or to having been in possession of the Note "since inception." [Doc. 52, p. 2]. As previously noted, portions of an affidavit should only be excluded if the affiant could not have observed or perceived the facts to which he is attesting. *See Gutierrez de Lopez*, 761 F.3d at 1132. Here, it is reasonable that being in possession of the purported Note, Mr. Walters could, through observation, determine whether it is the original Note executed by Ms. Neill or a copy. *See id.*

To the extent Mr. Hutchins argues that the Walters Affidavit lacks foundation because the litigation file referenced in the Affidavit was not attached to the Affidavit, this argument is unavailing. [Doc. 43, p. 3]. As previously discussed, Rule 56 no longer requires that documents referenced in an affidavit supporting summary judgment be attached to the affidavit itself. *See* Fed. R. Civ. P. 56(c)(4) advisory committee notes to 2010 amendment. More importantly, Mr. Walters' personal knowledge of his job duties as Wilmington Savings' attorney is a sufficient foundation for his statement that he is responsible for and familiar with Wilmington Savings' litigation file. Therefore, a failure to attach the litigation file to the Walters Affidavit is not grounds to strike it.

### 5. Mr. Walters' Statement Regarding the Original Note is not an Impermissible Legal Conclusion

Mr. Hutchins claims that Mr. Walters' statement, that the Note is the original, is a legal conclusion, which should not be included in the Affidavit. [Doc. 43, p. 3]. However, whether the Note in the possession of Mr. Walters' firm is the document executed by Ms. Neill, rather than a copy, depends upon the existence or nonexistence of a fact discernable by observing the document, and is therefore a factual statement, not a legal conclusion. *See Statement of Fact*, Black's Law Dictionary 11th ed. (2019).

16

**6.  Mr. Hutchins has not Established That Sanctions are Warranted**

Mr. Hutchins seeks sanctions under Rule 56(h), claiming that both the McMahan and Walters Affidavits were submitted in bad faith. [Doc. 43, p. 4; Doc. 44, pp. 9-10]. Rule 56(h) states that the Court may award "reasonable expenses, including attorney's fees," may hold "an offending party or attorney" in contempt, or impose "other appropriate sanctions" "if [the Court is] satisfied that an affidavit or declaration under [Rule 56] is submitted in bad faith or solely for delay." Fed. R. Civ. P. 56(h); *see Masterson v. Killen*, No.1:11-cv-01179-DAD-SAB (PC), 2017 WL 892761, at *2 (E.D. Cal. Mar. 7, 2017) ("Bad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose."); *DeLorme v. Markwitz*, No. 14-CV-6104-FPG, 2017 WL 512617, at *3 (W.D.N.Y. Feb. 8, 2017) (recognizing that for purposes of Rule 56(h), "bad faith is only found…when the attorney's conduct is egregious, such as where affidavits contain perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case." (internal quotation marks and citation omitted)). Sanctions under Rule 56(h) are "made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions." Fed. R. Civ. P. 56(h) advisory committee note to 2010 amendment.

Mr. Hutchins claims that sanctions are appropriate here because Wilmington Savings "knew or should have known" that the McMahan and Walters Affidavits "lacked authenticity and reliability yet still chose to present misrepresentations and false statements to this Court." [Doc. 43, p. 4; Doc. 44, pp. 9-10]. As discussed above, Mr. Hutchins has not shown that the Affidavits lacked authenticity or reliability, contained false statements, or were made in bad faith and has therefore not established grounds for sanctions against Wilmington Savings relative to the Affidavits.

I find that Mr. Hutchins has not established grounds to strike the McMahan and Walters Affidavits, in part or in full. Nor has he established that sanctions against Wilmington Savings in connection with the Affidavits are warranted. I recommend that Mr. Hutchins' motions to strike and for sanctions be denied.

### 3.   Wilmington Savings Established the Absence of a Genuine Issue of Material Fact as to its Right to Foreclose the Mortgage

A federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007); *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1983). Under New Mexico law, a cause of action "against the maker of a promissory note is established if the plaintiff proves that: (1) plaintiff is the holder of the note on which [the plaintiff] sues; (2) defendant signed the note; (3) the note became due and payable; and (4) defendant has not paid the amount due and owing." *MTGLQ Inv'rs, LP v. Wellington*, No. CV 17-487, 2019 WL 4600196, at *7 (D.N.M. Sept. 23, 2019) (internal quotation marks and citation omitted); *see* NMSA 1978, Section 55-3-104 (1992) (defining a "note" as an "unconditional promise…to pay a fixed amount of money, with or without interest or other charges described in the promise or order"); NMSA 1978, Section 55-3-301 (1992) (defining "person entitled to enforce an instrument" to include the holder of the instrument"); NMSA 1978, Section 55-3-304 (1992); NMSA 1978, Section 55-3-402 (1992);

An entity wishing to foreclose a mortgage must establish that at the time the foreclosure action was filed the entity had the right to enforce the note underlying the mortgage, as well as ownership of the mortgage lien on the property. *See Deutsche Bank Nat'l Trust Co. v. Johnston*, 2016-NMSC-013, ¶ 23. One way to show the right to enforce the note is to attach a copy of the note bearing appropriate indorsements to the complaint. *See id.* In this case, Wilmington Savings attached the Note, indorsed in blank, to its Amended Complaint. [Doc. 30-1]. It also attached the

Walters Affidavit, in which Mr. Walters stated that the original Note was in Wilmington Savings'
litigation file at the time the lawsuit was initiated. [Doc. 30-3]. Wilmington Savings' possession
of the Note, indorsed in blank, at the commencement of the case is sufficient to establish that
Wilmington Savings is the holder of the Note and entitled to enforce it. *See Bank of N.Y. v. Romero*,
2014-NMSC-007, ¶ 26 ("[The] blank indorsement ... established the [b]ank as a holder because
the [b]ank [was] in possession of bearer paper[.]"); *see also* NMSA 1978, § 55-3-104(a) (stating
that a promissory note can be enforced by the holder of the instrument); NMSA 1978, § 55-1-
201(b)(21)(A) (2005) (stating that the holder of the instrument is "the person in possession of a
negotiable instrument that is payable either to bearer [(in blank)] or to an identified person that is
the person in possession").

Wilmington Savings' entitlement to enforce the Note itself is sufficient to establish its right
to foreclose the Mortgage. Under New Mexico law, a mortgage follows the underlying note,
allowing a "subsequent holder of the note to enforce the mortgage even without a formal
assignment of the mortgage." *HSBC Bank USA, Nat'l Ass'n as Tr. for Wells Fargo Asset Sec.
Corp., Mortg. Asset-Back Pass-Through Certificates Series 2007-PA3 v. Wiles*, 2020-NMCA-
____, ¶ 12, (No. A-1-CA-36567, Apr. 2, 2020). Accordingly, when the Note indorsed in blank was
transferred to Wilmington Savings prior to the commencement of this suit, the Mortgage followed
the Note into Wilmington Savings' possession. *See id.*, ¶ 17; *Medler v. Childers*, 1913-NMSC-
015, ¶ 9, 17 N.M. 530; *see also BAC Home Loans Servicing LP v. Smith*, 2016-NMCA-025, ¶ 8
("Because the right to enforce the mortgage arises from the right to enforce the note, the question
of standing turns on whether the plaintiff has established timely ownership of the note.").

Moreover, an Assignment transferring the Mortgage from Mortgage Electronic
Registration Systems, Inc., as nominee for original lender CTX Mortgage Company, LLC to JP

Morgan Mortgage Acquisition Corp. was recorded in Sandoval County on May 6, 2009, and a second Assignment transferring the Mortgage from JP Morgan Mortgage Acquisition Corp. to Wilmington Savings was recorded in Sandoval County on March 25, 2015. [Doc. 30-4]. The Note, Mortgage, and Assignments were attached to Wilmington Savings' Amended Complaint. [Doc. 30-1; Doc. 30-2; Doc. 30-4]. Therefore, there is no question that Wilmington Savings owns the Mortgage lien on the property. *Romero*, 2014-NMSC-007, ¶ 35 (recognizing that "[a]s a nominee for [the original lender] on the mortgage contract, MERS could assign the mortgage."); *Flagstar Bank*, *FSB v. Licha*, 2015-NMCA-086, ¶ 17 (same).

Wilmington Savings has also submitted a payoff schedule showing that the loan has been in default since October 2008. [Doc. 42-1]. The default notice, which advised Ms. Neill of the default, amount due, and intent to accelerate, was sent to Ms. Neill on July 24, 2014. [Doc. 42-3]. The payoff schedule and McMahan Affidavit reflect that the default has not been cured; the amount of unpaid principal on the loan is $224,833.42, the amount due in interest as of March 22, 2018 was $147,746.00,[6] the amount due in late charges is $6698.94, and the amount due in unpaid charges including late charges and negative escrow balances is $83,208.40. [Doc. 42, p. 3; Doc. 42-1].

Wilmington Savings' evidence is sufficient to show the absence of genuine issues of material fact as to its right to enforce the Note and Mortgage and the default status of the loan. I conclude that Wilmington Savings has met its burden to establish a prima facie case on its claim to foreclose the Mortgage. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) ("The [summary judgment] movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a

---

[6] The interest is continuing to accrue at a rate of $42.94 per day. [Doc. 42, p. 3].

matter of law."); *MTGLQ Inv'rs, LP*, No. CV 17-487, 2019 WL 4600196, at *7 (D.N.M. Sept. 23, 2019) (setting forth the elements of a claim to enforce a note and mortgage under New Mexico law).

### 4. Mr. Hutchins has not Come Forward with Evidence Showing a Genuine Issue of Material Fact as to Wilmington Savings' Entitlement to Foreclose the Mortgage

Since Wilmington Savings has carried its initial burden on summary judgment, the burden shifts to Mr. Hutchins set forth specific evidentiary facts from which a rational trier of fact could find for him. *See Adler*, 144 F.3d at 671 ("If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.").

In opposing summary judgment, Mr. Hutchins has submitted evidence in the form of his own Affidavit and a printout of a docket entry from the United States Bankruptcy Court for the District of New Mexico. [Doc. 45, pp. 20, 21]. In his Affidavit, Mr. Hutchins details his efforts and ultimate failure to confirm Wilmington Savings' existence as a legal entity. [*Id.*, p. 20]. The Bankruptcy Court docket entry reflects that on September 12, 2018, the Chapter 7 Trustee's Report of no distribution was filed in Ms. Neill's bankruptcy case. [*Id.*, p. 22]. I understand this evidence to be offered in support of Mr. Hutchins' arguments that this Court lacks jurisdiction over Wilmington Savings because Wilmington Savings is not a valid legal entity and that Wilmington Savings cannot enforce the Note because Ms. Neill's *in personam* liability on the Note was discharged by the Bankruptcy Court. [Doc. 45, pp. 16-18]. However, as previously noted, these arguments were rejected by the Court in its Memorandum Opinion and Order denying Mr. Hutchins' motion to dismiss. [Doc. 60, pp. 8-10].

The evidence submitted by Mr. Hutchins does not create a genuine issue of material fact as to whether Wilmington Savings is entitled to foreclose the Mortgage. *See MTGLQ Inv'rs, LP*, No. CV 17-487, 2019 WL 4600196, at *7 (D.N.M. Sept. 23, 2019). Accordingly, Mr. Hutchins has not met his burden on summary judgment to set forth specific evidentiary facts from which a rational trier of fact could find for the him. *See Adler*, 144 F.3d at 671.

### 5. Any Interest Mr. Hutchins has in the Subject Property is Inferior to Wilmington Savings' Interest

In acquiring a mortgage interest "[a] mortgagee acquires a lien on the owner's property which may be conveyed together with the mortgagor's personal obligation to repay the debts secured by the mortgage." *Macaron v. Assocs. Capital Servs. Corp.*, 1987-NMCA-005, ¶ 7, 105 N.M. 380, 381-82; *see* NMSA 1978, §§ 39-5-1 to -23; NMSA 1978, § 48-7-7; *see also Slemmons v. Massie*, 1984-NMSC-108, ¶ 5, 102 N.M. 33, 34 ("The mortgage, both on its face and under New Mexico law, []gives the mortgagee the right to enforce the lien by foreclosing on the property."). "The mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property." *Macaron*, 1987-NMCA-005, ¶ 7, 105 N.M. at 82.

When Wilmington Savings acquired its interest in the Note and Mortgage, it acquired the rights of the original mortgagee, including the original mortgagee's priority under the "first in time, first in right" principle. *See* NMSA 1978, § 55-3-203 (1992) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course."); *Macaron*, 1987-NMCA-005, ¶ 7. Moreover, Wilmington Savings' security interest in the property was perfected upon the recording of the Assignment with the county clerk. *See In re Finch*, 1995-NMSC-068, ¶ 13, 120 N.M. 658, 661 (recognizing that filing of a mortgage in the county records perfected the mortgagee's security interest). Because the original Mortgage and the Assignment of the mortgage

interest to Wilmington Savings were recorded years before this lawsuit was filed, and before Hutchins' Deed was recorded on September 13, 2018, Wilmington Savings' interest in the property takes priority over Hutchins' claimed interest as it was first in time. [Doc. 30-2; Doc. 30-4, p. 3; Doc. 42-9]. Mr. Hutchins has not presented any evidentiary facts which would suggest that any interest in the property obtained through the Deed is superior to Wilmington Savings interest.

Prior to her death, Ms. Neill also bequeathed her interest in the subject property to Mr. Hutchins in her will. [Doc. 42-10]. However, there is no evidence in the record that the will has been entered into probate. As such, the will, and any interest in the property purportedly conveyed to Mr. Hutchins in the will, is not effective and cannot not take priority over Wilmington Savings mortgage interest. *See* NMSA 1978, § 45-3-102 (2005) ("[T]o be effective to prove the transfer of any property or to nominate a personal representative, a will must be declared to be valid by an order of informal probate by the probate court or an adjudication of probate by the district court.").

Even if Ms. Neill's will was effective, it would not preclude Wilmington Savings from foreclosing the Mortgage, the interest in which was acquired prior to Ms. Neill's death. *See In re Estate of Garrett*, No. 34,368, mem. op. ¶ 7, 2015 WL 3750780, at *2 (N.M. Ct. App. May 13, 2015) (non-precedential) (acknowledging that where a debt still exists under a valid note after the debtor's death, the note and mortgage can be enforced against the debtor's estate and the mortgage securing the note can be foreclosed); *See Macaron*, 1987-NMCA-005, ¶ 7, 105 N.M. at 82.

For the foregoing reasons, I conclude that Wilmington Savings is entitled to foreclose the Mortgage and has established the absence of a genuine issues of material fact as to the amount due and owing on the loan, as well as its lien's priority over any interest subsequently acquired by Mr.

Hutchins.[7] Therefore, I recommend that summary judgment be granted in Wilmington Savings' favor as to its claim against Mr. Hutchins and that Wilmington Savings be awarded damages for the amounts stated in the Note (unpaid principal, accrued interest, and Wilmington Savings' expenses in enforcing the Note, including reasonable attorneys' fees), a decree of foreclosure, and a judicial sale to generate the proceeds to cover its damages.

## C. Default Judgment Should be Granted on Wilmington Savings' Claim Against the Unknown Heirs, Devisees and Legatees of Ms. Neill

Default judgment may enter against a party who fails to appear or otherwise defend pursuant to Fed. R. Civ. P. 55. Federal Rule of Civil Procedure 55 mandates a two-step process for a default judgment. Fed. R. Civ. P. 55. First, a party must obtain a Clerk's entry of default. Second, the party must request a default judgment. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); Fed. R. Civ. P. 55. Once a defendant is found to be in default, the Court must take "as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003). The Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Garcia Gutierrez v. Puentes*, No. 18-CV-00581, 2020 WL 570845, at *2 (D.N.M. Feb. 5, 2020) (internal quotation marks and citation omitted). A party is not entitled to a default judgment as of right. Rather the entry of a default judgment is entrusted to the sound judicial discretion of the Court. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

Here, the Unknown Heirs, Devisees, or Legatees of Ms. Neill were served by publication and have failed to answer or otherwise plead. [Doc. 37-1]. The Clerk's Entry of Default was properly filed on April 25, 2019. [Doc. 41]. The pertinent unchallenged facts set forth in the

---

[7] Although Wilmington Savings challenges the validity of Mr. Hutchins' claimed interest in the subject property, the Court need not resolve this issue as *any* interest claimed by Mr. Hutchins was acquired after Wilmington Savings' interest and is therefore inferior to Wilmington Savings' lien.

Amended Complaint are as follows: the Note described in the Amended Complaint was executed and delivered by Ms. Neill CTX Mortgage Company, LLC on May 23, 2007 [Doc. 30, pp. 3]; in order to secure payment of the Note, Ms. Neill executed and delivered the Mortgage to Mortgage Electronic Registration Systems, Inc., as nominee for CTX Mortgage Company, LLC [*Id.*]; the original Note was indorsed in blank and in the possession of Wilmington Savings at the time this litigation was initiated [*Id.*]; the Mortgage was subsequently assigned to Wilmington Savings [*Id.*, pp. 4-5]; the Note is in default and the amount of unpaid principal due is $224,833.42, plus interest at the current rate of 6.875% per annum from September 1, 2008 forward, plus late charges, escrows, and advances [*Id.*, pp. 4, 6]; as of March 22, 2018, interest in the amount of $147,746.00 was owed on the loan balance and interest continues to accrue at the rate of $42.94 per day from March 23, 2018 forward until the loan balance is paid. [*Id.*, p. 4].

These unchallenged facts are supported by the record and provide a sufficient basis for an Order of default judgment. Therefore, I recommend that Wilmington Savings' motion for default judgment against the Unknown Heirs, Devisees, or Legatees of Ms. Neill be granted.

## III.    RECOMMENDATION

For the foregoing reasons, I recommend that *Plaintiff's Motion for Summary Judgment Against Gregory Hutchins and Motion for Default Judgment Against Remaining Defendants* [Doc. 42] be GRANTED and that Defendant Hutchins' *Motion to Strike Affidavit of Ryan Walters and Cross Motion for Sanctions* [Doc. 43] and *Motion to Strike Affidavit of Ron McMahan and Cross Motion for Sanctions* [Doc. 44] be DENIED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

25

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**